IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| Camille Wagner<br>c/o Walton + Brown, LLP<br>395 E. Broad Street, Suite 200<br>Columbus, Ohio 43215<br><br>      Plaintiff,<br><br>vs.<br><br>TriHealth Incorporated<br>625 Eden Park Drive<br>Cincinnati, Ohio 45202<br><br>      Defendant. | Case No.:<br><br>Judge:<br><br>COMPLAINT<br><br>JURY DEMAND ENDORSED HEREON |

Plaintiff Camille Wagner (hereinafter referred to as either "Plaintiff" or "Ms. Wagner"), by and through counsel, states the following as her Complaint against Defendant:

PARTIES

1. Plaintiff is an individual who, at all relevant times herein, resided in Hamilton County, Ohio.

2. Defendant, TriHealth Incorporated (hereinafter "Defendant" or "TriHealth"), is a corporation registered with the Ohio Secretary of State and conducting business in the State of Ohio.

3. Defendant employs fifteen or more persons within the state of Ohio and is an "employer" as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), and O.R.C. §4112.01(A)(2).

4. At all relevant times, Plaintiff was an "employee" of Defendant as defined by 42 U.S.C. § 2000e(f) and O.R.C. §4112.01(A)(3).

5. Plaintiff was wrongfully terminated from employment on February 20, 2024.

JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves federal questions under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred in Hamilton County, Ohio, and Defendant conducts substantial business in this district.

FACTUAL BACKGROUND

9. Plaintiff began her employment with TriHealth on June 5, 2023, as a Human Resources Business Partner (HRBP).

10. Plaintiff reported directly to Ellen Beckett, Vice President of Human Resources Operations, with a secondary reporting line to David Atkinson, Chief People & Culture Officer.

11. From the start of her employment, Plaintiff was not provided with formal training or onboarding support and was required to perform her job duties without structured guidance.

12. Despite multiple requests, Plaintiff was denied access to training that was afforded other comparators.

13. Plaintiff was frequently excluded from key HR meetings. This impacted her ability to perform her job effectively.

14. Plaintiff noticed that other non-minority employees received training and onboarding support than she did.

15. While her white colleagues were provided with structured guidance, shadowing opportunities, and essential system training, Plaintiff was left to navigate her role independently with minimal support.

16. This disparate treatment hindered Plaintiff's ability to perform her job effectively and contributed to the discriminatory work environment she experienced.

17. Plaintiff sought guidance from management on workplace policies and best practices but received minimal support.

18. On February 14, 2024, Plaintiff was informed by Beckett that she was the only HRBP who had received complaints but never investigated the complaints as she normally would have for other employees. Beckett told Plaintiff that she was on the verge of being terminated because of the complaints, despite additional claims that had been filed which disputed all three complaints filed against Plaintiff.

19. In response to Beckett's excessive and unwarranted criticism, Plaintiff formally submitted a complaint to David Atkinson and COO Terri Hanlon-Bremer on February 15, 2024. In her complaint, Plaintiff detailed the racial discrimination and workplace exclusion she experienced under Beckett's supervision.

20. On February 16, 2024, Plaintiff was instructed to discuss her complaint with Beckett, the individual she had reported for discrimination. Plaintiff expressed to Atkinson verbally and in writing her discomfort for discussing her complaint with Beckett because this would place her in a threatening environment.

21. On February 20, 2024, Plaintiff was called into a meeting with Atkinson and TriHealth's legal representative.

22. During this meeting, Atkinson mischaracterized Plaintiff's concerns, claiming she had expressed a desire to separate from the company.

23. Plaintiff immediately refuted this assertion, clarifying that she wished to continue working but in a non-hostile environment. Despite her protests, Atkinson insisted that her departure would be processed as a voluntary resignation.
24. Plaintiff was given no option to remain employed, nor was she provided with any meaningful resolution to the discrimination she reported.
25. Plaintiff repeatedly stated she did not wish to resign and wished to continue working but was told there was no alternative.

COUNT I

(Race Discrimination – Title VII, 42 U.S.C. § 2000e-2; 42 U.S.C. § 1981; O.R.C. § 4112.02(A))

21. Plaintiff incorporates the preceding Paragraphs as if fully rewritten herein.
22. Plaintiff is a member of a protected class and was subjected to adverse employment actions based on her race.
23. Defendant treated Plaintiff differently than similarly situated white employees by denying her access to training, excluding her from meetings, and subjecting her to heightened scrutiny.
24. Defendant's conduct resulted in economic loss, emotional distress, and other damages to Plaintiff.

COUNT II

(Retaliation – Title VII, 42 U.S.C. § 2000e-3; 42 U.S.C. § 1981; O.R.C. § 4112.02(I))

25. Plaintiff incorporates the preceding Paragraphs as if fully rewritten herein.
26. Plaintiff engaged in a protected activity by reporting workplace discrimination to senior management.
27. Shortly after reporting her concerns, Defendant took adverse employment actions, culminating in her termination.

28. The proximity between Plaintiff's complaint and her termination suggests that Defendant's actions were retaliatory in nature.

29. Defendant's conduct directly caused Plaintiff to suffer economic and non-economic damages.

COUNT III

(Constructive Termination – Title VII, 42 U.S.C. § 2000e-2; O.R.C. § 4112.02(A))

30. Plaintiff incorporates the preceding Paragraphs as if fully rewritten herein.

31. Defendant's deliberate actions created intolerable working conditions, making continued employment untenable.

32. Plaintiff was given no viable option to remain employed despite her requests to continue working.

33. Defendant's classification of Plaintiff's termination as voluntary is pretextual and intended to conceal discriminatory and retaliatory motives.

34. As a direct and proximate result of Defendant's conduct, Plaintiff suffered financial loss, emotional distress, and professional harm.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Award damages for lost wages, emotional distress, and other compensatory damages;

b. Award punitive damages to deter future misconduct;

c. Grant injunctive relief, including reinstatement and changes to Defendant's policies;

d. Award Plaintiff her reasonable attorney's fees and costs; and

e. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**/s/ Chanda L. Brown**
Chanda L. Brown (0081076)

                WALTON + BROWN, LLP
                395 E. Broad Street, Suite 200
                Columbus, Ohio 43215
                Telephone:   (614) 636-3476
                Facsimile:    (614) 636-3453
                Email: cbrown@waltonbrownlaw.com
                *Attorney for Plaintiff Jereco Berry*

## JURY DEMAND

Plaintiff hereby requests a jury of eight (8) persons to hear all issues so triable.

                **/s/ Chanda L. Brown**
                Chanda L. Brown (0081076)